UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA MORRISON,

                          Plaintiff,

                          Case # 20-CV-6468-FPG

v.

                          DECISION AND ORDER

MIDLAND FUNDING, LLC, et al.,

                          Defendants.
_____

## INTRODUCTION

Before this Court are Defendants Midland Credit Management, Inc. ("MCM"), Midland Funding, LLC ("Midland Funding"), and Selip & Stylianou, LLP's ("S&S") (collectively, "Defendants") motions to compel individual arbitration and dismiss Plaintiff Jessica Morrison's ("Plaintiff") claims, ECF Nos. 20, 22, and Plaintiff's motion for leave to file a response to a new matter, ECF No. 27.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons set forth below the Court GRANTS Defendants Midland Funding and MCM's Motion to Compel Arbitration, ECF No. 20, and GRANTS Defendant S&S's Motion to Compel Arbitration, ECF No. 22. The case is DISMISSED without prejudice.

## BACKGROUND[2]

On or about May 10, 2017, Synchrony Bank ("Synchrony") mailed Plaintiff a credit card and the Credit Card Agreement governing the use of the credit account. ECF No. 20-1 ¶ 7. The

---

[1] Plaintiff's Motion for Leave to File a Response to a New Matter, ECF No. 27, is DENIED. Defendants did not raise new arguments in their reply briefs, but rather, responded to the arguments raised in Plaintiff's response briefing. If Plaintiff wanted to file a sur-reply in response to Defendants' arguments, Plaintiff should have sought leave from the Court in accordance with the Local Rules. No matter, the arguments contained within Plaintiff's Motion for Leave do not alter the Court's analysis here.

[2] The following recitation of facts is taken from the parties' motion papers, including briefs, affidavits, declarations, and the documents attached to and referenced therein.

Credit Card Agreement (the "Agreement") provided that, by opening and using the credit card, Plaintiff agreed to the terms of the Agreement. *See generally* ECF No. 20-2. The Agreement expressly allowed for any changes by written notice and contained an arbitration provision which stated, in pertinent part:

> **PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING . . . .**
>
> **YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT . . . .**

ECF No. 20-2 at 3 (emphasis in original). The arbitration provision also stated that it will apply to "any dispute or claim . . . if it relates to your account." *Id.*

According to Plaintiff's billing statements, the last purchase on Plaintiff's account was posted on May 11, 2017. ECF No. 20-4 at 2.[3] The last payment posted to Plaintiff's account was October 30, 2017. ECF No. 20-3 at 4. The account was written off as a loss by Synchrony on June 6, 2018. ECF No. 20-1 ¶ 10.

On July 21, 2018, Midland Funding purchased numerous accounts, including Plaintiff's charged-off account, from Synchrony. *See* ECF No. 20-6 ¶ 4; ECF No. 20-7 at 3. Specifically, Synchrony sold and Midland Funding acquired all the rights, title, and interest in Plaintiff's account. *See generally* ECF No. 20-6. Thereafter, MCM serviced Plaintiff's account. *Id.*

---

[3] Other than the parties' paginated memorandums in support of their respective briefings, all citations herein refer to the page numbering of the Court's electronic filing system.

On or about November 14, 2019, Midland Funding filed a lawsuit against Plaintiff in Wayne County Supreme Court, seeking to collect on the outstanding credit card debt. ECF No. 1 ¶ 49. S&S conducted all proceedings on behalf of Midland Funding. *Id.* ¶ 50. A default judgment in favor of Midland Funding was entered on January 27, 2020. *Id.* ¶ 53. Midland Funding then attempted to collect on the judgment by filing an Income Execution with the Wayne County Sheriff's Office on or about February 24, 2020. *Id.* ¶ 54. According to Plaintiff, the Income Execution contained false statements and failed to comply with various requirements as set forth by New York State Consumer Protection Law. *See id.* ¶¶ 59-66. This suit followed.

In her Complaint, Plaintiff sues individually and on behalf of two classes alleging that Defendants violated the Fair Det Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and New York General Business Law § 349 in the debt collection process. *See generally* ECF No. 1. In response, Defendants filed the instant motions to compel arbitration and dismiss the complaint on October 2, 2020 and October 8, 2020 respectively. ECF Nos. 20, 22. All responses were timely filed. *See* ECF Nos. 24, 25, 26. Plaintiff then filed a motion for leave to file a response to a new matter on November 9, 2020 which Defendants opposed. ECF Nos. 27, 28, 29.

**APPLICABLE LAW**

The Federal Arbitration Act (the "FAA") mandates that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision demonstrates "both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms,"

3

*id.* (citation omitted), including "terms that 'specify with whom the parties choose to arbitrate their disputes.'" *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 683 (2010)).

In deciding whether to compel arbitration, the Second Circuit has instructed district courts to consider (1) whether the parties agreed to arbitrate and (2) if the dispute falls within the scope of the agreement. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008). State law principles ordinarily govern inquiries concerning the formation of the contract.[4] *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## DISCUSSION

In asserting that arbitration of this claim is improper, Plaintiff relies on two general contentions: (1) that the arbitration agreement does not apply because the court judgment entered on the underlying debt extinguished the agreement and there is no longer an "account" upon which to enforce the arbitration provision and (2) that the Defendants here are not entitled to invoke the arbitration clause for this claim. The Court disagrees.

### I. THE UNDERLYING DEBT JUDGMENT DOES NOT EXTINGUISH THE CONTRACTUAL OBLIGATIONS

Plaintiff asserts that pursuant to *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96 (2d Cir. 2004) and the merger doctrine, her underlying contractual debt merged with the judgment entered in state court, such that the underlying debt was extinguished and only the judgment

---

[4] The Arbitration provision states that the Agreement is governed by the FAA, and to the extent state law is relevant under the FAA, Utah law applies. Defendants MCM and Midland Funding apply New York law in analyzing whether a valid agreement exists, *see* ECF No. 20-11 at 11, Defendant S&S cites to Utah law in its discussion of whether a valid agreement exists, *see* ECF No. 22-1 at 8, and Plaintiff applies Utah law, *see generally*, ECF No. 24. No matter, the same result stems from the application of either New York or Utah law, in that a valid Agreement to arbitrate was entered. The parties merely disagree as to whether the arbitration provision is applicable to the circumstances present here—to the parties specifically as well as to the claim at issue. The Court has evaluated such claims under the applicable federal principles and does not find that application of either New York or Utah state law would alter its conclusion.

4

survived. *See id.* at 102. On this basis, Plaintiff claims that any disputes concerning the enforcement or collection of that judgment should be handled strictly by the courts, as the merger doctrine renders the collection claim beyond the scope of the arbitration provision. *See* ECF No. 24 at 2. Although merger may extinguish a *contract debt* when it merges with a judgment debt, the underlying *contract* itself is not extinguished. *See Exp.-Imp. Bank of the Republic of China v. Gren.*, No. 13 CIV. 1450 HB, 2013 WL 4414875, at *3 (S.D.N.Y. Aug. 19, 2013). Rather, when an individual claim is adjudicated, the merger principle merely extinguishes that specific claim that was adjudicated and replaces it with a final judgment. *See Orix Credit All., Inc. v. Horten*, 965 F. Supp. 481, 485 (S.D.N.Y. 1997). Indeed, courts have recognized that extinguishing the underlying contract when a specific claim regarding the contract reaches judgment "would inappropriately weaken rights or destroy identities which the prevailing party had in [its] original cause." *NML Capital, Ltd. v. Republic of Arg.*, Nos. 14 Civ. 8601, 14 Civ. 8988, 14 Civ. 8630[5], 2015 WL 3542535, at *4 (S.D.N.Y. June 5, 2015) (internal quotations and citations omitted). Thus, even after a judgment is entered on the contractual debt, the underlying agreement remains in effect and may support subsequent breaches or claims.

It therefore follows that here, when Defendants received the favorable state court judgment against Plaintiff on the debt, that underlying debt merged with the court judgment such that Defendants can no longer litigate that specific debt claim. However, the *manner* in which Defendants sought to collect on that court judgment and whether such efforts complied with applicable consumer protection laws is a wholly separate claim from the underlying debt and judgment. The Agreement itself contemplates such a scenario. Specifically, the Agreement indicates that cases filed to collect money owed by Plaintiff will *not* be subject to arbitration, but

---

[5] Additional case numbers omitted.

that a response to such a suit that there was alleged wrongdoing *may* be subject to arbitration. *See* ECF No. 20-2 at 3. Therefore, Plaintiff's reliance on *Westinghouse* and the merger doctrine is misplaced. The state court judgment on the underlying debt did not extinguish all obligations under the contract.

As Defendant points out, the circumstances in *Sung v. Sacor Financial, Inc.*, No. 16-CV-1317 (ERK) (VMS), 2018 WL 4298341 (S.D.N.Y. May 2, 2018), are analogous. There, plaintiff had an overdue credit card account that was assigned, via purchase agreement, to a new owner who obtained a default money judgment on the debt and thereafter began executing on plaintiff's wages to collect on the judgment. *Id.* at *1. Plaintiff then commenced an action against the debt collector claiming that the income execution was done in violation of the FDCPA—similar to Plaintiff's claim here. *Id.* The court compelled plaintiff to arbitrate the claim based on its determination that the arbitration provision in the underlying credit agreement was valid and enforceable on the FDCPA claim. *See generally id.*

Thus, regardless of whether an underlying court judgment merges with and extinguishes an underlying contractual debt, the contract itself and its obligations—including the ability to compel the arbitration of subsequent claims—do not similarly merge. If Plaintiff's merger theory was correct, contracts would be rendered meaningless whenever a party breached any portion of an agreement and the other party obtained a judgment on such breach. That is not the intention of the merger doctrine. *See, e.g.*, *Orix Credit Alliance*, 965 F. Supp. at 485 ("The doctrine of merger is based primarily on the policy of preventing multiple lawsuits based on the *same cause of action*—thus, it is 'closely related' to the doctrine of res judicata.") (emphasis added) (citations omitted).

Plaintiff analogizes this matter to cases in which courts have determined a party waived its right to arbitrate because of prior litigation. *See* ECF No. 24 at 16-17. Specifically, Plaintiff cites *Nelson v. Liberty Acquisitions Servicing LLC*, 374 P.3d 27 (Utah Ct. App. 2016). There, a debt collector's underlying suit for collection was dismissed on statute of limitations grounds. *Nelson*, 374 P.3d at 28. Subsequently, plaintiffs filed a class action alleging a violation of the FDCPA for filing time-barred debt collection lawsuits. *Id.* The court denied defendants motion to compel holding that defendants waived their right to arbitration by filing the underlying debt collection action in court. *Id.* at 32. However, the court in *Reifenberger v. Autovest LLC*, No. 20-CV-571-DAK-JCB, 2021 WL 212237 (D. Utah Jan. 21, 2021), distinguished *Nelson* on the grounds that the underlying contract before it specifically stated "[e]ven if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit." *Id.* at *5. Because the agreement expressly permitted parties to file suit without waiving the right to compel arbitration on subsequent claims, the court in *Reifenberger* compelled arbitration on the plaintiffs' improper collection process claim. *Id.*

Here, the Agreement contains a similar provision. Specifically, the Agreement states that, "[w]e will not require you to arbitrate: . . . a case we file to collect money you owe to us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate." ECF No. 20-2 at 3. Thus, as was found in *Reifenberger*, Plaintiff's argument here that Defendants waived their right to arbitration by filing the underlying debt collection claim in state court is contrary to the clear terms of the agreement.

Therefore, the Court does not find that either of Plaintiff's arguments regarding the inapplicability of the arbitration clause in the Agreement persuasive. The merger doctrine does not extinguish the underlying contract, the agreement contains clear language predicting this

7

circumstance, and importantly, numerous courts have found such FDCPA claims in similar circumstances properly arbitrated in accordance with the underlying agreement. *See, e.g.*, *Brown v. Midland Credit Mgmt., Inc.*, 20-CV-4239, 2020 WL 5117975, at *2 (S.D.N.Y. Aug. 31, 2020) (determining plaintiff's FDCPA claims fell within the scope of the arbitration provision because an alleged improper collections process on an underlying debt "plainly 'relates' to the Account Agreement"); *Kernaghan v. Foster & Garbus, LLP*, No. 18-CV-204 (SJF) (AKT), 2019 WL 981640, at *5 (E.D.N.Y. Feb. 25, 2019) (determining an alleged violation of the FDCPA in recovering a debt owed on a contract fell within the scope of the arbitration clause because it implicates parties' obligations under the contract).

## II. DEFENDANTS' RIGHT TO COMPEL ARBITRATION OF THE CLAIMS ASSERTED

Next, Plaintiff contends that the Defendants cannot compel arbitration in accordance with the terms of the Agreement because "none of the Defendants is [sic] Synchrony Bank, an affiliate of Synchrony Bank, an agent of Synchrony Bank, or a dealer, merchant or retailer that accepts the credit card or is a program sponsor," and while Synchrony may have assigned its right to compel arbitration to Midland Funding, the clause does not apply to claims or disputes based on the conduct of Midland entities and their attorneys. ECF No. 24 at 4.

In support of this contention, Plaintiff relies on a series of cases wherein courts determined that compelling arbitration was improper because, according to the applicable definition, disputes between "you" and "us" in the arbitration clauses at issue did not include the law firm who handled the collection. *See* ECF No. 24 at 5. However, the authority relied upon by Plaintiff is inapposite. In most of the cases, the relevant arbitration clause explicitly required that the *bank* or *credit holder* be a named defendant in the action in order for a named defendant debt collector or law firm to also be entitled to invoke the arbitration clause, and such parties were not named in the claims.

8

*See Cohen v. Wolpoff & Abramson, LLP*, Civ. No. 08-1084, 2008 WL 4513569 (D.N.J. Oct. 2, 2008); *Bontempo v. Wolpoff & Abramson, LLP*, No. Civ.A. 06- 745, 2006 WL 3040905 (W.D. Pa. Oct. 24, 2006); *Wise v. Zwicker & Assocs., PC*, No. 5:12-cv-01653, 2013 WL 1195555 (N.D. Ohio Mar. 22, 2013).[6] No such requirement exists in the Agreement here. Rather, the Agreement states, without any express condition, that the arbitration provision applies to "us, our affiliates, agents and/or dealers/merchants/retailers . . . as it relates to the account." ECF No. 20-2 at 3. As discussed in detail below, the Court finds that Defendants indeed fall into these categories. Therefore, this argument is unpersuasive.

### A. Defendants Midland Funding and MCM

There is no question that upon assignment, Midland Funding stepped into the shoes of Synchrony when it purchased "all rights, title and interest in the Account." ECF No. 20-11 at 9; *see, e.g.*, *Brown*, 2020 WL 5117975 at *1 (evaluating identical language and determining that Midland was entitled to enforce the arbitration provision); *Bowker v. Midland Funding, LLC*, Civ. No. 18-11320, 2020 WL 5743044, at *2 (D.N.J. Sept. 25, 2020) (evaluating identical language and holding that, under the purchase agreement language, Midland Funding received all rights including the right to arbitrate); *Lance v. Midland Credit Mgmt.*, Civ. No. 18-4933, 2019 WL 2143362, at *5 (E.D. Pa. May 16, 2019) (determining that when Midland bought the rights to the account at issue the purchase included the right to arbitration). Therefore, as numerous courts in similar circumstances have held, the right of Midland Funding to compel arbitration is clear.

---

[6] The additional case Plaintiff points to in support of this argument involved an arbitration clause that did *not* include the language present here; specifically, that the arbitration provision applies to affiliates and agents. *See Nazar v. Wolpoff & Abramson, LLP*, 2:07-cv-2025, 2007 WL 2875377 (D. Kan. Oct. 3, 2007). Rather, the clause in *Nazar* made no mention of the application to any affiliates, agents, or assigns. Thus, this argument is also unpersuasive.

9

Moreover, because MCM is Midland Funding's affiliate tasked with collecting on Plaintiff's account, MCM is also entitled to enforce the agreement. *See Bowker*, 2020 WL 5743044 at *2-3.

However, Plaintiff asserts that while Midland Funding and MCM could compel arbitration in some circumstances, they cannot compel arbitration here because the underlying claim is not a claim which Synchrony could have ever brought against Plaintiff. Rather, the underlying claim is based solely on Defendants' own alleged misconduct in collecting on the underlying debt. *See* ECF No. 24. Numerous, well-reasoned decisions, however, have reached a contrary result. *See, e.g.*, *Brown*, 2020 WL 5117975 at *2 (plaintiff's FDCPA claim fails within the agreement pursuant to which Midland, as assignee, was entitled to compel to arbitration); *Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340 (JFB) (ARL), 2018 WL 1225539, at *10 (E.D.N.Y. Mar. 9, 2019) (plaintiff compelled to arbitrate FCDPA claim with assignee as it was subject to the arbitration clause in the underlying agreement); *Lance*, 2019 WL 2143362 at *8-9 (same).

Therefore, Defendants Midland Funding and MCM's motion to compel arbitration is GRANTED.

**B. Defendant S&S**

Typically, "[t]he relationship between a lawyer and client is one of agent and principal." *In re Artha Mngmt., Inc.*, 91 F.3d 326, 328 (2d Cir. 1996). Plaintiff does not contest that Defendant S&S, as lawyers for Defendants Midland Funding and MCM, acted as agents for purposes of the debt collection here. Rather, Plaintiff contends that where an agreement "specifies exactly what agents and affiliates and other persons are entitled to benefit from [the Agreement]," it would not be permissible to then find that "excluded affiliates can benefit as well." ECF No. 24 at 24-25. Plaintiff however cites no authority to support this assertion. Indeed, relevant case law confirms the opposite.

The circumstances in *Clarke v. Alltran Financial, LP*, No. 17-CV-3330, 2018 WL 1036951 (E.D.N.Y. Feb. 22, 2018), are analogous. There, plaintiff brought a claim against defendant debt collectors for violations of the FDCPA due to allegedly false and misleading debt collection letters regarding an underlying debt plaintiff allegedly owed to Citibank. *Clarke*, 2018 WL 1036951 at *1. Defendant moved to compel arbitration and plaintiff opposed, asserting, *inter alia*, that defendant, as a non-signatory to the underlying agreement and party hired merely to collect on the underlying debt, was barred from compelling arbitration. *Id.* The court however granted the motion to compel arbitration finding that the plain language of the agreement demonstrated that not *only* plaintiff and Citibank could compel arbitration. Rather, the agreement stated "[c]laims made by or against anyone connected with us or you or claiming through us or you . . . *such as an agent*, [or] representative" are subject to arbitration, supported a finding that an agent, such as the named defendant in the action, was in fact entitled to compel arbitration pursuant to the agreement. *Id.* at *4.

The same analysis applies here. There is no question that S&S was retained by Midland Funding and MCM to collect on the debt owed by Plaintiff. Moreover, the Agreement states that "you and we must arbitrate any dispute or claim between you . . . and us, our affiliates, *agents* and/or dealers/merchants/retailers." ECF No. 20-2 at 3 (emphasis added). When Midland Funding purchased all rights in the Agreement and stepped into the shoes of Synchrony, Midland Funding inherited the terms of the Agreement, including that its affiliates and agents may compel arbitration under the Agreement. As the court stated in *Clarke*, a narrow reading of an arbitration provision as applicable to *only* the cardholder and the bank (or relevant signatory)—where an agreement did not clearly include such limiting language—would be improper. *Clarke*, 2018 WL 1036951 at *4.

Therefore, Defendant S&S's motion to compel arbitration is GRANTED.

In light of the foregoing analysis granting Defendants Midland Funding, MCM, and S&S's motions to compel arbitration of Plaintiff's individual claim, the Court DISMISSES this action pending completion of the arbitration proceedings.[7]

## CONCLUSION

For the reasons set forth above, Defendants Midland Funding and MCM's Motion to Compel, ECF No. 20, is GRANTED, Defendant S&S's Motion to Compel, ECF No. 22, is GRANTED, and Plaintiff's Motion for Leave, ECF No. 27, is DENIED. The case is DISMISSED without prejudice pending the outcome of the claim in arbitration. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 21, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[7] The Court need not determine whether Plaintiff may proceed with any class claims under the Agreement. Regardless of whether the Agreement permits Plaintiff to proceed with class claims against some of the Defendants, Plaintiff may not press her individual claims in federal court, and accordingly, her class claims in federal court are subject to dismissal. *Cf. Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) ("[I]n general, if the claims of the named plaintiffs becomes moot prior to class certification, the entire action becomes moot."); *Grant v. Gilbert*, 324 F.3d 383, 389-90 (5th Cir. 2003) (acknowledging general rule that class claims become moot when the personal claims of the named plaintiffs are satisfied prior to class certification); *see also Genesis Health Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (addressing collection-action claims under the FLSA and recognizing the general principal that the collective-action claims become moot when the individual claims become moot).